UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

SUSIE WILLIAMS,                        )
                                       )
        Plaintiffs,                    )
                                       )
                                       )     CASE NO.: CV-00321-WKW-TFM
v.                                     )
                                       )
VIVA HEALTH INC. AND                   )
RICKY CRAPP,                           )
                                       )
        Defendants.                    )

NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

**COMES NOW** the Plaintiff, by and through her undersigned counsel of record, and provides

notice of supplemental case authority in support of her Motion to Remand. As grounds therefor, the

Plaintiff shows as follows:

1. This matter is before this court on Plaintiff's Motion to Remand, which was filed on April

25, 2007. The issues raised in said Motion have already been fully briefed by the parties. However

on September 28,2007, the Honorable Judge Ira DeMent of the United States District Court for the

Middle District of Alabama entered a Memorandum Opinion and Order in *Romie Harris, et. al. v*

*Pacificare Life & Health Ins. Co., et. al.*, Civ Action No. 2:06cv956-ID (WO), granting Plaintiff's

Motion to Remand, which was filed in a factually similar case involving the very same claims of

federal preemption through the Medicare Modernization Act of 2003 for Medicare Advantage Plans.

(*See* Memorandum Opinion and Order, attached hereto as Exhibit A). The *Harris* opinion is directly

on point with the facts and legal issues before this Court in the instant Motion to Remand, and its

holding should be considered *stare decisis* for the United States District Court for the Middle District

of Alabama. Thus, the Plaintiff respectfully requests this Court follow it here.

2. In *Harris v. Pacificare,* the Plaintiffs originally filed their lawsuit in the Circuit Court of Bullock County, Alabama, accusing Pacificare and its agents of fraud and other state common-law causes of action in connection with the purchase of Pacificare's Secure Horizons Medicare Advantage Plan. *See* id. at 3-4. Pacificare removed the case to the U.S. District Court for the Middle District of Alabama arguing that the Medicare Act, as amended by 42 U.S.C. §1395w26(b)(3), completely preempted the Plaintiffs' state law causes of action. *See id.* At 4-5. The plaintiffs filed a Motion Remand. *See id.*

Judge DeMent held that Pacificare did not meet its burden of proving that the Plaintiff's state law claims arise under federal law through the doctrine of complete preemption so as to support removal jurisdiction. *See 0id. at 5.* The holding principally turned on Judge DeMent's conclusion that Pacificare incorrectly mingled the doctrines of "ordinary preemption" and "complete preemption". *See id at* 14. According to Judge DeMent, Pacificare wrongfully assumed that, "if Plaintiffs' state common-law claims fall within the scope of 42 U.S.C. § 1395w-26(b)(3), then those claims arise under federal law, thereby establishing a basis for federal-question removal jurisdiction." Id at 19. Judge DeMent continued, "In making that assumption, however, Pacificare ... ignores the threshold question of whether 42 U.S.C. § 1395w-26(b)(3) is a complete preemption statute at all." Id.[1]

According to Judge DeMent, the complete preemption inquiry turns on whether the statute at issue provides an exclusive, private cause of action for the claim asserted. *See id.* at 24. Relying on federal authority recognizing that there must be evidence of Congressional intent for complete

---

[1]The Harris Court also concluded that Pacificare erroneously relied on statutory and case authority that had their origins in ordinary preemption, *not complete preemption. See id.* at 20. In this regard, Judge DeMent declined to follow the two principal cases relied on by Pacificare-*Uhm v. Humana, Inc.,* 2006 WL 1587443 *(*W.D. Wash 2006) and *First Medical Health Plan, Inc. v. Vega,* 406 F. Supp.2nd 150 (D. Puerto Rico 2005). *See id. at* 20-24.

preemption like that found in ERISA and the LMRA, Judge DeMent concluded that the Medicare

Act does not:

> Pacificare has not pointed to any analogous language in the MMA's legislative history which clearly establishes that, when amending 42 U.S.C. § 1395w-26(b)(3), Congress intended that the MMA would provide an "exclusive cause of action" to redress rights, such as those underlying Plaintiffs' state common-law claims, or that Congress intended that state-law claims falling within §1395w-26(b)(3)'s scope would be regarded as arising under the laws of the United States. Id. at 25 (citations omitted).

Judge DeMent further held that Pacificare has not demonstrated that 42 U.S.C. § 1395w-26(b)(3)

or the MMA's regulatory provisions found in 42 C.F.R. §§422.560-422.612 provide an "exclusive

private federal remedy for the alleged wrongful conduct alleged by the Plaintiffs or, in other words,

that Congress intended to displace Plaintiffs' state common-law claims in favor of an exclusive

private federal remedy." Id. at 28.

3. In the present action, the Plaintiff filed a similar complaint as that of the plaintiff in Harris,

alleging state law causes of action.[2] The product is a medicare advantage plan administered by

Defendant Viva Health. The Defendants' grounds for removal, and the Plaintiffs' grounds for

remand, are identical to those in *Harris*. In the present action, much like Pacificare in *Harris,* Viva

Health has failed to show an exclusive private federal remedy for alleged wrongful conduct alleged

by the Plaintiff or, in other words, that Congress intended to displace Plaintiff's state common-law

claims in favor of an exclusive private federal remedy. Accordingly, the Plaintiff's Motion for

Remand is due to be granted.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully request this Court to

remand this matter to state court from where it was removed.

---

[2] Plaintiffs' counsel in this action is also counsel for plaintiffs in Harris v. Pacificare.

Respectfully submitted,


/s/L. Cooper Ruland, Jr.
L.Cooper Rutland, Jr. (RUT010)

OF COUNSEL:
RUTLAND LAW, L.L.C
208 N. Prairie Street
P.O. Box 551
Union Springs, AL 36089
Telephone:    334-738-4770
Fax:          334-738-4774


## CERTIFICATE OF SERVICE

I hereby certify that on 2nd day of October, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

James S. Christie Jr., Esq
Amelia T. Driscoll
**BRADLEY, ARANT, ROSE & WHITE, LLP**
1819 Fifth Ave. North
Birmingham, AL 35203
Telephone: 205-521-8000

Paula Denney
John K. Edwards
**JACKSON, WALKER, LLP**
1401 McKinney, Suite 1900
Houston, TX 77010

/s/L. Cooper Rutland Jr.
**OF COUNSEL**

## Exhibit A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROMIE HARRIS, Jr., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIV. ACT. NO. 2:06cv956-ID |
| v. | ) | (WO) |
| | ) | |
| PACIFICARE LIFE & HEALTH INS. CO., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the court is a motion to remand, which is accompanied by a memorandum of law, filed by Plaintiffs Romie Harris, Jr., Amy Harris, Ruby Francis Fowler, Mary Lois Green, James Thomas, Lula Thomas and Janie Buford ("Plaintiffs"). (Doc. Nos. 7-8.) The motion includes a request for an award of costs and attorney's fees. (Id.) Defendant Pacificare Life and Health Insurance Company ("Pacificare"), the removing defendant, opposes Plaintiffs' motion. (See Doc. Nos. 12-13.) Plaintiffs originally filed their complaint in the Circuit Court of Bullock County, Alabama, accusing Pacificare and its agents of fraud and other state common-law violations in connection with the purchase of one of Pacificare's Medicare insurance policies. Although the complaint does not refer to any federal law, Pacificare removed this case to the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. §§ 1331 and 1441(b), arguing that this case arises under the Medicare Act, 42 U.S.C. §§ 1395w-21 – w28, as amended by the

Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), by

virtue of the MMA's preemption clause, codified at 42 U.S.C. § 1395w-26(b)(3).

Plaintiffs challenge Pacificare's jurisdictional ground and move to remand this lawsuit

back to state court. Plaintiffs argue that removal was procedurally defective and that their

state common-law claims are not completely preempted. After careful consideration of

the arguments of counsel, the relevant law and the record as a whole, the court finds that

Plaintiffs' motion to remand is due to be granted, but that Plaintiffs' request for costs and

attorney's fees is due to be denied.


## II. STANDARD OF REVIEW

Pacificare, as the party removing this action to federal court, has the burden of

establishing federal jurisdiction. See Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972

(11th Cir. 2002); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). Federal district

courts are "'empowered to hear only those cases within the judicial power of the United

States as defined by Article III of the Constitution,' and which have been entrusted to

them by a jurisdictional grant authorized by Congress." Univ. of South Alabama v. The

American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton,

30 F.3d 1365 (11th Cir. 1994)). Accordingly, the federal removal statutes must be

"construed narrowly," and, generally speaking, all doubts about removal must be resolved

in favor of remand. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2002).

## III. BACKGROUND

Seven Plaintiffs, adult citizens of Bullock County, Alabama, filed this lawsuit on September 21, 2006, in the Circuit Court of Bullock County, Alabama.[1] (Compl. ¶¶ 1-5 (Doc. No. 1-3).) The complaint alleges the following facts.

At various times during 2006, Plaintiffs enrolled in a Medicare Advantage plan offered by Pacificare. Pacificare's plan is called the Secure Horizons Direct, which is a "Private Fee for Service Health Plan." (Id. ¶ 13.) The individual Defendants are "agents" of Pacificare who sold Plaintiffs the plans at issue. (Id. ¶¶ 7-9.) Plaintiffs allege that Defendants "acted in concert" to contact "all Medicare recipients" in Bullock County, Alabama, including Plaintiffs. (Id. ¶ 14.) As part of their concerted efforts, Defendants misrepresented that Plaintiffs "were required to enroll in Secure Horizons Direct under the federal government's new prescription drug program," (id. ¶ 15), and misrepresented that Defendants, in actuality, were "dis-enrolling Plaintiffs from their Medicare coverage and enrolling them" in Secure Horizons Direct's private Medicare Advantage plan. (Id. ¶ 16.) Consequently, Plaintiffs contend that their "benefits and healthcare coverage through Medicare was drastically reduced" and that, in most cases, medical care previously provided to Plaintiffs was "summarily denied by Pacificare," causing Plaintiffs to suffer physical injury and mental distress and to incur large medical bills. (Id. ¶¶ 17-19.)

---

[1] One of the plaintiffs, Amy Harris, is now deceased. Gussie Welch, the administratrix of the estate of Amy Harris, has been substituted as plaintiff for Harris. (Doc. No. 23.)

Plaintiffs' complaint alleges state common-law causes of action against Pacificare and the individual Defendants. In Count I, a fraud claim, Plaintiffs contend that Defendants "misrepresented themselves as signing up people for the government's new prescription drug program." (Id. ¶¶ 22-26.) In Count II – an unjust enrichment claim predicated upon averments that Defendants "fraudulently diverted Plaintiffs' Medicare premiums" to Pacificare's Medicare Advantage plan – Plaintiffs seek "disgorgement of all premiums paid by Plaintiffs and a permanent injunction against Defendants barring them from contacting others in Bullock County." (Id. ¶¶ 28-29.) Counts III, IV and V set forth claims under Alabama law for negligent infliction of emotional distress, wantonness, and outrage based upon averments that Defendants "lie[d]" about the terms and conditions of Pacificare's Medicare Advantage plan "to exploit the old and infirm for profit" and compromised Plaintiffs' healthcare needs. (Id. ¶¶ 30-41.) Compensatory and punitive damages are sought. (Id. at 3-5.)

## IV. DISCUSSION

Because this lawsuit began in state court, the court's jurisdiction depends on the propriety of removal. Pacificare predicates federal-question removal jurisdiction on the doctrine of complete preemption. Pacificare relies on 42 U.S.C. § 1395w-26(b)(3) as the statutory vehicle through which complete preemption of Plaintiffs' state common-law

4

claims is accomplished.[2]  (See Pacificare Not. of Removal ¶¶ 3, 5 (Doc. No. 1-1));

(Pacificare Resp. to Pls. Mot. Remand at 4 (¶ 2.5) (Doc. No. 12)); 28 U.S.C. §§ 1331,

1441(b).

Plaintiffs' arguments opposing removal and urging remand are twofold.  First,

Plaintiffs assert that removal was procedurally defective because Pacificare failed to join

Defendant Robert Bell ("Bell") in the removal action.  (Pls. Mot. ¶ 4 (Doc. No. 7).)

Second, Plaintiffs argue that Pacificare has not met its burden of demonstrating a basis for

federal-question removal jurisdiction.  (Id. ¶¶ 5-6); (Pls. Mem. of Law at 3-4 (Doc.

No. 8).)

In Section A, below, the court rejects Plaintiffs' argument that removal was

procedurally defective.  In Section B, the court explains why Pacificare has not met its

burden of proving that Plaintiffs' state common-law claims arise under federal law through

the doctrine of complete preemption so as to support removal jurisdiction.  In Section C,

the court addresses the removal jurisdiction doctrine which is premised on the existence of

a substantial question of federal law and explains that, to the extent Pacificare has raised

this doctrine as a separate ground for removal jurisdiction, its argument fails.  Finally, in

---

[2] Pacificare also asserts that, to the extent that any of Plaintiffs' state common-law
claims survive complete preemption, the court should exercise supplemental jurisdiction
and try them together with the federal claims.  (See Pacificare Not. of Removal ¶¶ 4-5
(Doc. No. 1-1).)

Section D, the court explains the reasons for denying an award of costs and attorney's
fees, pursuant to 28 U.S.C. § 1447(c).


### A. Defect in the Removal Procedure

Relying on the Eleventh Circuit's "unanimity requirement," Plaintiffs argue that
Pacificare's removal is procedurally defective because Bell did not join in the removal of
this lawsuit from state to federal court. (Pls. Mem. of Law at 2 (Doc. No. 8).) Pacificare,
however, contends that, on the date of removal, Bell had not been properly served in
accordance with state procedural rules and that, therefore, Bell's consent was not required
for removal and the unanimity rule was not violated. (Doc. No. 1 ¶ 9.) The court agrees
with Pacificare, but for slightly different reasons from those it has urged.

The "unanimity" rule requires that where there are multiple defendants, all
defendants must either join in or consent to removal. Russell Corp. v. Am. Home Assur.
Co., 264 F.3d 1040, 1044 (11th Cir. 2001). Derived from 28 U.S.C. § 1446, which sets out
the procedure for removal, the unanimity rule governs in this circuit. See id.; Loftis v.
UPS, 342 F.3d 509, 516 (6th Cir. 2003). "Like all rules governing removal, this unanimity
requirement must be strictly interpreted and enforced because of the significant federalism
concerns arising in the context of federal removal jurisdiction." Russell Corp., 264 F.3d
at 1049. The unanimity rule, however, is not violated when the alleged offender of the
rule has not been served at the time the removal petition is filed: "[A] defendant that has
not been served with process need not join in or consent to removal." GMFS, L.L.C. v.

6

Bounds, 275 F. Supp.2d 1350, 1354 (S.D. Ala. 2003); Retirement Systems of Alabama v.

Merrill Lynch & Co., 209 F. Supp.2d 1257, 1262 n.8 (M.D. Ala. 2002) (Albritton, J.)

(noting that there are three exceptions to the unanimity rule, the first being when "a co-

defendant has not been served at the time the removal petition was filed").

It is undisputed that Bell did not join in or consent to the removal of this case from

state to federal court. Whether he was required to join in or consent to removal is

disputed. The answer to this disputed issue depends upon whether Bell properly was

served.

In support of their contention that they properly served Bell by certified mail,

Plaintiffs rely on the certified mail, return receipt form (PS Form 3811), which was

addressed to Robert D. Bell at 208 North Cleveland Street in Albany, Georgia, and was

signed by a "Tommy Bell" on September 25, 2006. (See Ex. B to Not. Removal); (Doc.

No. 16 at 1-2); (Pls. Mem. of Law at 2 (Doc. No. 8).) Pacificare contends that the PS

Form 3811 is not sufficient evidence of service and submits two affidavits from Bell to

contest the validity of service of process. (Bell Affs. (Doc. No. 13-2; Doc. No. 17-2).) In

his affidavits, Bell provides an address in Shellman, Georgia, where he says he has

"resided exclusively" since the filing of the complaint in this case. (Doc. No. 17-2 ¶ 3.)

Bell further attests that his full name is Robert Dudley Bell, that the signature on the PS

Form 3811 is not his, that he does not go by the name of "Tommy," that he does not know

anyone named "Tommy Bell," and that "Tommy Bell" is not authorized to accept any

legal papers on his behalf. (Pacificare Mem. of Law ¶ 2 (Doc. No. 13-2)); (Doc. No. 17-2

¶ 4.) Moreover, Bell states that he has "not been served with or otherwise received a copy of the civil summons and complaint," and he has not "received any papers from the Court related to this suit." (Doc. No. 17-2 ¶ 2.)

Arguing their competing positions as to the sufficiency of service of process on Bell, Plaintiffs cite the Alabama Rules of Civil Procedure, while Pacificare relies on Georgia's procedural rules. This case originally was filed in the Circuit Court of Bullock County, Alabama, and service upon Bell was initiated under the Alabama Rules of Civil Procedure. (See Doc. No. 1-3.) The issue of whether there was proper service of process on Bell prior to removal, therefore, must be determined in accordance with Alabama's procedural rules governing service of process. See Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001) ("In determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made.") (quotations and citation omitted); Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285, 1286 n.1 (11th Cir. 1985) ("A federal court may consider the sufficiency of process after removal and does so by looking to the state law governing process."); cf. Fed. R. Civ. P. 81(c) (Federal Rules of Civil Procedure "govern procedure *after* removal") (emphasis added).

Here, in conjunction with filing their complaint in state court, Plaintiffs submitted a written request with the state circuit clerk requesting service by certified mail on "Robert

D. Bell" at "508 North Cleveland Street" in Albany, Georgia.[3]  (See Doc. No. 1-3.)  The

certified mail, return receipt of service signed by "Tommy Bell" (PS Form 3811) is part of

the record and is the sole evidence upon which Plaintiffs rely to demonstrate valid service

on Bell.  The court assumes, without deciding, that the signed PS Form 3811 constitutes

prima facie evidence of perfected service of process on Bell.  The court, though, finds for

three reasons that Bell's affidavits establish by strong and convincing proof that service by

certified mail on Bell had not been perfected on the date of removal.  Cf. Ins. Mgmt. &

Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212-13 (Ala. 1991) (individual

challenging properly executed return receipt for service of process via certified mail to

out-of-state defendant "bears the burden of establishing lack of service by clear and

convincing evidence").

     First, Bell attests that he did not sign the PS Form 3811 and that his address is

different from the one set out in the complaint and in the PS Form 3811.[4]  This evidence

forecloses any argument that the summons and complaint were delivered to the named

addressee.  Second, Bell's affidavits refute any argument that "Tommy Bell" was Bell's

agent authorized to receive service of process on Bell's behalf:  Bell attests that "Tommy

---

[3] At that time, the procedure for perfecting service by certified mail was contained in Rule 4.1 of the Alabama Rules of Civil Procedure.  (See Doc. No. 1-3.)

[4] The court notes that there is a discrepancy between the address printed on the civil summons (508 North Cleveland Street) and the address printed on the PS Form 3811 (208 North Cleveland Street).  (See Exs. attached to Doc. No. 1-3.)  This discrepancy, though, is immaterial for purposes of determining sufficiency of process because Bell has indicated that, at all relevant times, he did not reside at either address.

Bell" is not his authorized agent and that he does not even know a "Tommy Bell." Third,

Bell disavows "actual receipt" of the summons and complaint.

Plaintiffs have not provided any contrary evidence. Based upon Bell's unrefuted

affidavits, the court finds that Bell was not properly served at the time of removal and,

thus, was not required to join in or consent to removal. Accordingly, removal was

procedurally proper, and remand to state court is not appropriate on this ground.

### B.  Complete Preemption

The next issue is whether Pacificare has demonstrated that the 2003 amendment to

42 U.S.C. § 1395w-26(b)(3) completely preempts (not ordinarily preempts) Plaintiffs'

state common-law claims so as to provide the requisite federal-question jurisdiction to

support removal. See 28 U.S.C. §§ 1331, 1441(b). The short answer to the issue is that

Pacificare has not met its burden of demonstrating complete preemption. The long answer

follows.

### 1.  General Principles of Complete Preemption

In Beneficial National Bank v. Anderson, the Supreme Court set forth the

principles which govern the determination of whether removal of a case with only state-

law claims is proper. See 539 U.S. 1 (2003). "A civil action filed in a state court may be

removed to federal court if the claim is one 'arising under' federal law." Id. at 6 (citing 28

U.S.C. § 1441(b)). Generally, "[t]o determine whether the claim arises under federal law,

[the court] examine[s] the 'well pleaded' allegations of the complaint and ignore[s]

potential defenses[.]" Id. Under the well-pleaded complaint rule, "a case does not arise

under federal law unless a federal question is presented on the face of the plaintiff's

complaint." Smith v. Wynfield Dev. Co., Inc., No. 06-11810, 2007 WL 1654149, *4 (11[th]

Cir. June 8, 2007). Hence, "as a general rule, absent diversity jurisdiction, a case will not

be removable if the complaint does not affirmatively allege a federal claim."[5] Beneficial

National Bank, 539 U.S. at 6.

     The well-pleaded complaint rule, though, is subject to certain narrow exceptions.

See id. at 8. Removal is proper "when Congress expressly so provides . . . , or when a

federal statute wholly displaces the state-law cause of action through complete

preemption." Id. at 6. As an example of the first scenario, the Supreme Court observed

that Congress "expressly" provided for removal under the Price-Anderson Act, codified at

42 U.S.C. § 2014(hh). As noted by the Court, this Act "not only gives federal courts

jurisdiction over tort actions arising out of nuclear accidents but also expressly provides

for removal of such actions brought in state court even when they assert only state-law

---

    [5] The parties agree that diversity jurisdiction does not exist in this case; thus, removal was proper only if the complaint raises a federal question. See 28 U.S.C. § 1331.

claims."[6] Id. at 6.  The second circumstance identified by Beneficial National Bank is not a new jurisdictional principle; it is the "'complete preemption' doctrine." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 855 (11th Cir. 1999) (observing that the complete preemption doctrine originated in Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968)).

Complete preemption takes effect when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Caterpillar, Inc., 482 U.S. at 393 (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004).  The extraordinary preemptive force "must be manifest in the clearly expressed intent of Congress." Geddes v. American Airlines, Inc., 321 F.3d 1349, 1353 (11th Cir. 2003).  Explaining the relationship between the complete preemption doctrine and the federal removal statute, the Court in Beneficial National Bank stated:

---

[6] The court notes that this exception is not at issue in this case.  The MMA's preemption clause does not contain express language authorizing removal of state law claims as in the Price-Anderson Act.  Cf. Hoskins v. Bekins Van Lines, 343 F.3d 769, 773 (5th Cir. 2003) (applying Beneficial National Bank and opining that "[b]ecause the Carmack Amendment does not expressly provide for removal of state law claims, [defendant] properly removed this case only if the Carmack Amendment completely pre-empts state law claims for loss or damage to goods arising from the interstate transportation of those goods by a common carrier").

> When the federal statute completely pre-empts the state-law cause of action,
> a claim which comes within the scope of that cause of action, even if
> pleaded in terms of state law, is in reality based on federal law. This claim
> is then removable under 28 U.S.C. § 1441(b), which authorizes any claim
> that "arises under" federal law to be removed to federal court.

539 U.S. at 8.

The application of the complete preemption doctrine has been limited. In

Beneficial National Bank, the Supreme Court recognized that previously it found complete

preemption only in two statutes: (1) § 301 of the Labor Management Relations Act

("LMRA"), codified at 29 U.S.C. § 185; and (2) § 502(a) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1132(a). Id. at 8. The

Beneficial National Bank Court added a third category of complete preemption, holding

that §§ 85-86 of the National Bank Act, comparable to ERISA § 502(a) and LMRA § 301,

"provided the exclusive cause of action" for claims asserting usury against national banks

and "set forth procedures and remedies governing that cause of action." Id.; 12 U.S.C.

§§ 85-86. Examining §§ 85-86 of the National Bank Act, the Court focused on

congressional intent, the touchstone of the complete preemption inquiry, but shifted the

focal point of the congressional intent inquiry from "whether Congress intended that the

cause of action be removable" (the position argued by the respondents who advocated for

remand) to whether Congress intended the federal cause of action to be "exclusive." Id.

at 9 & n.5; see Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1291 (11th Cir. 2004)

(reaffirming that, after Beneficial National Bank, "the 'touchstone' of federal question

jurisdiction based on complete preemption [remains] congressional intent"); Hoskins, 343

13

F.3d at 776 (construing <u>Beneficial National Bank</u> as "evidencing a shift in focus from

Congress's intent that the claim be removable, to Congress's intent that the federal action

be *exclusive*") (emphasis in original).


### 2. *Complete Preemption versus Ordinary Preemption*

The issue in this case is whether federal court, *not* federal law, is appropriate.  In

other words, ordinary preemption is not at issue, only complete preemption.  Although the

doctrines are separate and distinct, Pacificare conflates the two doctrines, as discussed

more fully below; thus, at this juncture, the court finds that it is helpful, as in <u>Geddes</u>,

*supra*, to set out briefly "the differences between 'complete' preemption and 'ordinary'

preemption."  321 F.3d at 1352.

"[O]rdinary preemption may be invoked in both state and federal court as an

affirmative defense to the allegations in a plaintiff's complaint."  <u>Id.</u>  "Such a defense

asserts that the state claims have been substantively displaced by federal law."  <u>Id.</u> (citing

<u>Caterpillar, Inc.</u>, 482 U.S. at 392) (emphasis added).  "However, a case may *not* be

removed to federal court on the basis of a federal defense, including that of federal

preemption."  <u>Id.</u> at 1352-53 (emphasis in original).  On the other hand, complete

preemption "is a narrowly drawn jurisdictional rule for assessing federal removal

jurisdiction when a complaint purports to raise only state law claims."  <u>Id.</u> at 1353.  As

summarized by the <u>Geddes</u> court: "[A] federal law may substantively displace state law

under ordinary preemption but lack the extraordinary force to create federal removal

14

jurisdiction under the doctrine of complete preemption." Id. "If no other grounds for

federal jurisdiction exist in such cases, then it falls to the state courts to assess the merits

of the ordinary preemption defense." Id.


### 3.  The MMA and 42 U.S.C. § 1395w-26(b)(3)

In 2003, Congress passed the Medicare Prescription Drug, Improvement, and

Modernization Act ("MMA").  The MMA amended the Medicare Act to provide a

subsidized voluntary prescription drug plan under Medicare Part D.  See 42 U.S.C.

§ 1395w-101(a)(1).  Under Medicare Part C which pertains to the Medicare Advantage

program, private managed care organizations, such as Pacificare, can enter into contracts

with enrollees to provide the full panoply of Medicare services (including Part A and Part

B benefits and sometimes Part D benefits) in exchange for payments paid to the

organization by the federal government.[7]  See generally Matthews v. Leavitt,

452 F.3d 145, 146 n.1 (2ⁿᵈ Cir. 2006); see also 42 U.S.C. §§ 1395w-21 - 1395w-29

(statutory provisions governing Medicare Part C).  Congress delegated authority to, among

others, the Secretary of Health and Human Services ("HHS") to promulgate rules "as may

be necessary to the efficient administration of the functions with which [he] is charged"

---

[7] As part of the codification of the MMA, the name of Part C's Medicare managed
care program was changed from "Medicare+Choice" to "Medicare Advantage."  See
Dep't of Health & Human Services, Centers for Medicare & Medicaid Services, Medicare
Program; Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588-01,
4588 (Jan. 28, 2005) (to be codified at 42 C.F.R. pts 417 & 422).

under the Medicare Act.  HHS, in turn, exercises his authority through the Centers for

Medicare and Medicaid Services ("CMS").  42 U.S.C. § 1302(a).

The MMA contains a preemption provision.  Prior to the 2003 amendment, the

Medicare Act preempted state laws and regulations to the extent that such laws and

regulations were "inconsistent" with federal enactments.[8]  See 42 U.S.C. § 1395w-

26(b)(3) (2002); Dep't of Health & Human Services, Centers for Medicare & Medicaid

Services, Medicare Program; Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01,

4319 (Jan. 28, 2005).  With the enactment of Section 232 of the MMA, Congress amended

42 U.S.C. § 1395w-26(b)(3), effective 2003, to include the following preemption

provision:

> Relation to State laws.  The standards established under this part shall
> supersede any State law or regulation (other than State licensing laws or
> State laws relating to plan solvency) with respect to [Medicare Advantage]
> plans which are offered by [Medicare Advantage] organizations under this
> part.

42 U.S.C. § 1395w-26(b)(3) (2003) (brackets added).

### 4. Arguments and Analysis

Pacificare relies on 42 U.S.C. § 1395w-26(b)(3), as amended in 2003, as the

provision which demonstrates Congress' intent to "'wholly displace[]'" Plaintiffs' state

---

[8] While Plaintiffs cite Burke v. Humana Ins. Co., No. Civ. A. Nos. 95-T-299-N,
95-T-300-N ((M.D. Ala. 1995), a complete preemption case, Burke was decided pursuant
to the former version of 42 U.S.C. § 1395w-26(b)(3), not the amended form of the statute
at issue here.  (Pls. Mem. of Law at 6-7 (Doc. No. 8).)

common-law claims. (Pacificare Mem. of Law at 8 (Doc. No. 13) (quoting Beneficial

National Bank, 539 U.S. at 8).) Neither the Eleventh Circuit nor any other circuit court of

appeals has addressed in a published opinion whether 42 U.S.C. § 1395w-26(b)(3), as

amended in 2003, completely preempts state common-law claims and supports removal

jurisdiction.

Pacificare asserts that the legislative history confirms Congress' intent in 2003 to

"significantly expand[] the scope of federal preemption for claims related to Medicare

Advantage and [Prescription Drug] plans." (Pacificare Mem. of Law at 5 (Doc. No. 13).)

As elucidative of Congress' intent, Pacificare cites the House Conference Report on the

2003 legislative amendment to the MMA preemption clause which "clarifies that the MA

program is a federal program operated under Federal rules. State laws, do not, and should

not apply, with the exception of state licensing laws or state laws related to plan

solvency." Medicare Prescription Drug, Improvement, and Modernization Act of 2003

H.R. Conf. Rep. 108-391, at 556-557 (Nov. 21, 2003), reprinted in 2004 U.S.C.C.A.N.

1808. Pacificare also cites CMS' comments, memorialized in the Federal Registry,

indicating that the twofold purpose of the 2003 amendment was to broaden the type of

claim falling within the preemptive reach of 42 U.S.C. § 1395w-26(b)(3) and to create a

presumption of preemption unless the state laws pertain to licensure or solvency. Dep't of

Health & Human Services, Centers for Medicare & Medicaid Services, Medicare Program;

Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01, 4319 (Jan. 28, 2005) (to be

codified at 42 C.F.R. pts. 400, 403, 411, 417 & 423); (Pacificare Mem. of Law at 9

(¶ 2.15) (Doc. No. 13).) Relying on the preemptive purpose set out in the MMA's legislative history, Pacificare argues that all of Plaintiffs' claims, although couched as state common-law claims, "relate to" the statutory and regulatory "standards" under the MMA and, thus, are "superceded and preempted" by 42 U.S.C. § 1395w-26(b)(3). (Doc. No. 1 at 3 (¶ 3)); (Pacificare Mem. of Law at 4 (¶ 2.5) (Doc. No. 13).) Pacificare points out that there is a federal statutory and regulatory framework governing the MMA and argues that this framework governs resolution of Plaintiffs' state common-law claims. (Pacificare Mem. of Law at 6-8 (Doc. No. 13) (citing scattered sections of the Code of Federal Regulations).)

Plaintiffs, on the other hand, argue that Pacificare has not demonstrated "any intent" by Congress to "make claims such as those asserted by Plaintiffs removable to federal court" or shown "that federal law has 'displaced' Plaintiffs' state law claim with causes of action." (Pls. Mem. of Law at 6 (Doc. No. 8).) Plaintiffs also contend that, in enacting the MMA, Congress did not "create a federal civil enforcement scheme" similar to the schemes governing ERISA § 502(a) and LMRA § 301. Furthermore, Plaintiffs assert that the federal regulations cited by Pacificare govern Voluntary Prescription Drug plans (Part D plans), and do not apply to Medicare Advantage plans, the type of plan at issue in this case. (Id. at 7.)

18

(a) Pacificare's Commingling of Ordinary and Complete Preemption

Pacificare's arguments resemble those made by the parties in <u>Sullivan v. American Airlines, Inc.</u>, 424 F.3d 267 (2d Cir. 2005). A different preemption statute was at issue in <u>Sullivan</u>, but, similar to the parties in that case, Pacificare assumes that, if Plaintiffs' state common-law claims fall within the scope of 42 U.S.C. § 1395w-26(b)(3), then those claims arise under federal law, thereby establishing a basis for federal-question removal jurisdiction. <u>See id.</u> at 271, 274. In making this assumption, however, Pacificare, like the parties in <u>Sullivan</u>, ignores the threshold question of whether 42 U.S.C. § 1395w-26(b)(3) is a complete preemption statute at all.

The <u>Sullivan</u> court's discussion is helpful for understanding Pacificare's error.[9] Deciding an issue of first impression, the <u>Sullivan</u> court examined whether the Railway Labor Act provided for complete preemption of certain state-law claims so as to support removal jurisdiction. After explaining the differences between complete and ordinary preemption, <u>see id.</u> at 272-74, the <u>Sullivan</u> court explained that, when the complete preemptive effect of a statute has not yet been decided (as here), a party's (or a court's) reliance on ordinary preemption under the statute as supporting removal jurisdiction, although improper, is "unsurprising." <u>Id.</u> at 274. Illustrating its point, the Second Circuit observed that once the Supreme Court of the United States

---

[9] Plaintiffs replicate Pacificare's error when arguing that the state common-law claims in the complaint are "unrelated" to the MMA's standards. (Pls. Reply at 6-9 (Doc. No. 16)); (Pls. Mem. of Law at 3-4 (Doc. No. 8).)

established that the preemptive force of § 301 of the LMRA dictates that
state-law claims within the statute's scope arise under federal law and are
removable to federal court, subsequent courts have been obligated only to
look at particular state-law claims to determine whether § 301, which
provides for original federal jurisdiction of LMRA claims, comprehends
those state-law claims. That is, once we know that a federal statute supports
complete preemption, providing original jurisdiction in the federal courts
over claims arising under the federal statute, in any particular case the
complete- and ordinary-preemption inquiries merge.

Id. at 275. As the parties in Sullivan, Pacificare merges the threshold and "higher-order

inquiry" by assuming that 42 U.S.C. § 1395w-26(b)(3) supports complete preemption of

state common-law claims and proceeding directly to the issue of whether Plaintiffs' state

common-law claims are preempted because they fall within the scope of § 1395w-

26(b)(3). Id. at 274-276.

    The commingling of ordinary and complete preemption principles by Pacificare is

further illuminated by its reliance on statutory and case law authorities which have their

origin in ordinary preemption, not complete preemption. The following are two

illustrations. First, Pacificare argues that 42 U.S.C. § 1395w-26(b)(3) "closely follows

ERISA's preemption provision" in § 514(a), codified at 29 U.S.C. § 1144(a), (see Doc.

No. 13 at 9), which provides that "[ERISA] shall supersede any and all State laws insofar

as they may now or hereafter relate to any [ERISA] plan." 29 U.S.C. § 1144(a).

Pacificare's analogy to ERISA § 514(a), however, does not support Pacificare's position

that removal jurisdiction exists under 42 U.S.C. § 1395w-26(b)(3), but actually sustains

the opposite conclusion. As articulated by the Eleventh Circuit, complete preemption

"arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132

20

for loss or denial of employee benefits," and gives federal court removal jurisdiction, while ordinary preemption "originates in ERISA's express preemption provision," *i.e.*, 29 U.S.C. § 1144(a), and "does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331." Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir. 1999); see also Felix v. Lucent Technologies, Inc., 387 F.3d 1146, 1156-57 (10th Cir. 2004) (explaining that courts and litigants frequently confuse ordinary preemption under § 514 with complete preemption under § 502(a), codified at 29 U.S.C. § 1132(a), and holding that only ERISA § 502(a) provides a basis for removal). Contrary to Pacificare's argument, the structural similarities between 42 U.S.C. § 1395w-26(b)(3) and ERISA § 514(a) more persuasively support an argument that 42 U.S.C. § 1395w-26(b)(3), like ERISA § 514(a), provides a preemption defense that cannot be used as a basis for removal from state to federal court.[10]

Second, as support for its argument that 42 U.S.C. § 1395w-26(b)(3) completely preempts Plaintiffs' state common-law claims, Pacificare relies heavily upon Uhm v. Humana, Inc., No. C06-0185-RSM, 2006 WL 1587443 (W.D. Wash. 2006), which Pacificare says involved claims "similar" to those asserted by Plaintiffs in this case. Pacificare also relies to a lesser extent on First Medical Health Plan, Inc. v. Vega ("First

---

[10] As a final illustration of Pacificare's conflation of ordinary and complete preemption principles, Pacificare borrows ERISA § 514(a)'s phrase "relates to," using it no less than six times in its brief when arguing that Plaintiffs' claims are completely preempted under 42 U.S.C. § 1395w-26(b)(3). (See, e.g., Pacificare Mem. of Law ¶¶ 2.5, 2.7, 2.12, 2.16, 2.21, 2.24) (Doc. No. 13).)

Medical"), 406 F. Supp.2d 150 (D. Puerto Rico 2005), rev'd, 479 F.3d 46 (1st Cir.

2007)).[11]  (Pacificare Mem. of Law at 9-11 (Doc. No. 13).)

Uhm and First Medical, though, did not discuss complete preemption in the

jurisdictional context of removal.  In Uhm, the court examined whether 42 U.S.C.

§ 1395w-26(b)(3) preempted the plaintiff's state law tort and contract claims for purposes

of evaluating whether the plaintiff had stated a claim for relief pursuant to the Rule

12(b)(6) standard of review.  See Fed. R. Civ. P. 12(b)(6).  The issue was whether

ordinary preemption as a substantive defense required dismissal of the state law causes of

action for failure to state a claim.  Finding that the state law claims were preempted, the

Uhm court relied upon the theory of express preemption in the *ordinary* preemption

context.  Uhm, 2006 WL 1587443, *1; see generally Sullivan, 424 F.3d at 273

(delineating three species of ordinary preemption).  Complete preemption was irrelevant to

the issues before the Uhm court (and was not addressed) because the Uhm plaintiff filed

her state law claims directly in federal court, pursuant to 28 U.S.C. § 1332(a).[12]  Simply

_____

[11] Pacificare relies on the district court's opinion in First Medical.  The First
Circuit reversed the judgment after Pacificare filed its brief opposing Plaintiffs' motion to
remand.  The reversal is insignificant for present purposes because, as set out below, First
Medical is inapposite.

[12] It also is noteworthy that the principle Supreme Court cases relied upon by the
Uhm court, namely, Medtronic, Inc., v. Lohr, 518 U.S. 470 (1996) and CSX
Transportation, Inc. v. Easterwood, 507 U.S. 658 (1993), likewise involved application of
the ordinary preemption doctrine raised as defenses in motions for summary judgment.
See Colbert v. Union Pacific R. Co., 485 F. Supp.2d 1236, 1242 (D. Kan. 2007)
(describing CSX Transportation Inc., *supra*, as "an ordinary conflict preemption case").

22

stated, the court was not concerned with removal jurisdiction at all. Similarly, the insurer, who was the plaintiff in First Medical, filed its lawsuit in federal court, and, thus, complete preemption as a basis for establishing federal-question removal jurisdiction also was not a consideration.

In short, Pacificare's reliance on Uhm and First Medical are not dispositive because "rulings that establish federal preemption as a defense to certain state law claims do not establish federal preemption as a basis for removal from state court." Leto v. RCA Corp., 341 F. Supp.2d 1001, 1008 (N.D. Ill. 2004); Metropolitan Life Ins. Co., 481 U.S. at 66 ("[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress. Even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction."). As set out earlier in this opinion, complete preemption is a jurisdictional concept quite different and separate from ordinary preemption. See Geddes, 321 F.3d at 1352-53. Ordinary preemption is a defense to a state-law claim, but it does not create federal question jurisdiction for lawsuits removed from state to federal court. The court, thus, finds that neither Uhm nor First Medical is persuasive on the question of complete preemption as a basis for removal and declines Pacificare's invitation to "accept and rely" upon Uhm as

authority for exercising removal jurisdiction in this case.[13]  (See Pacificare Mem. of Law

at 11 (Doc. No. 13).)


(b)  Exclusive Cause of Action

As stated, the complete preemption inquiry focuses on whether the statute at issue

"provide[s] the exclusive cause of action for the claim asserted."  Beneficial National

Bank, 539 U.S. at 8.  Pacificare relies upon CMS' dialogue that Congress expanded the

breadth of preemption under the MMA when it enacted the 2003 amendment to 42 U.S.C.

§ 1395w-26(b)(3).  The House Conference Report on the 2003 legislative amendment to

the MMA's preemption clause, relied upon by Pacificare and reported in H.R. Conf. Rep.

108-391, however, bears no similarities to the Conference Report on ERISA § 502(a),

which the Beneficial National Bank reiterated "unambiguously described an intent to treat

such actions 'as arising under the laws of the United States in similar fashion to those

_____

[13] On August 17, 2007, Pacificare filed a notice of supplemental authority, alerting
the court of an opinion from the United States District Court for the Southern District of
Alabama. (Doc. No. 28 (citing Dial v. Healthspring of Alabama, Inc., ___ F. Supp.2d
___, 2007 WL 2317783 (S.D. Ala. 2007).)  In Dial, the court denied a motion to remand
on the basis that at least some of the plaintiffs' state-law claims were completely
preempted by the MMA pursuant to 42 U.S.C. § 1395w-26(b)(3).  Pacificare argues that
the Dial opinion convincingly supports its position in this case.  However, the Dial court
relied on Uhm, supra, and First Medical, supra, as "persuasive" authority for finding
removal jurisdiction on the basis of complete preemption, but, as discussed above, the
Uhm and First Medical courts applied principles of ordinary preemption.  From aught that
appears, the Dial court found that complete preemption directly flowed from ordinary
preemption.  The court respectfully disagrees with Dial and declines to follow it here.
Id., ___ F. Supp. at ___, 2007 WL 2317783, *6.

brought under section 301 of the [LMRA].'" Beneficial National Bank, 539 U.S. at 7-8;

H.R. Conf. Rep. 108-391, at 556-57 (Nov. 21, 2003), reprinted in 2004 U.S.C.C.A.N.

1808. Pacificare has not pointed to any analogous language in the MMA's legislative

history which clearly establishes that, when amending 42 U.S.C. § 1395w-26(b)(3),

Congress intended that the MMA would provide an "exclusive cause of action" to redress

rights, such as those underlying Plaintiffs' state common-law claims, or that Congress

intended that state-law claims falling within § 1395w-26(b)(3)'s scope would be regarded

as arising under the laws of the United States. Beneficial National Bank, 539 U.S. at 8;

Geddes, 321 F.3d at 1353-55 (holding that a federal statute's extraordinary preemptive

force "must be manifest in the clearly expressed intent of Congress" and that, unlike

ERISA § 502 and LMRA § 301, neither the Railway Labor Act's language nor its

legislative history reveals a "clear congressional intent to authorize federal court

jurisdiction").


(c) Procedures and Remedies

The Beneficial National Bank Court also considered whether the National Banking

Act, §§ 85-86, "set forth procedures and remedies governing" the exclusive cause of

action. 539 U.S. at 8. As discussed in Beneficial National Bank, 12 U.S.C. §§ 85-86

provides a cause of action for usury (which was comparable to the plaintiff's state-law

usury cause of action), and includes specific provisions fixing the interest rate a national

bank lawfully may charge, setting forth the elements of a borrower's usury claim against a

national bank, and delineating the procedures and remedies which govern a borrower's

cause of action for excessive interest. See 539 U.S. at 9. ERISA § 502(a), in turn,

specifically empowers a "beneficiary" to bring a "civil action" against a plan provider for

various relief, including the recovery of benefits and enforcement of rights under a plan.

See 29 U.S.C. § 1132(a)(1). The ERISA statute contains provisions governing jurisdiction

in federal court, removal jurisdiction, venue and service of process, and establishes

mechanisms for the beneficiary to seek monetary awards, attorney's fees and costs. Id.

§ 1132(c)-(h). LMRA § 301 provides the same mechanisms for rights of action for civil

suits against labor organizations. See 29 U.S.C. § 185.

     Here, though, by its terms, 42 U.S.C. § 1395w-26(b)(3) does not provide any

private civil enforcement mechanisms. As pointed out by Plaintiffs, Pacificare cites

certain regulatory provisions of the MMA as providing for preemption of Plaintiffs' state

common-law claims, but it does not argue that those regulations – even if applicable to

Plaintiffs' claims in the ordinary preemption context, see, e.g., 42 C.F.R. §§ 422.560 -

422.612, a point upon which the court expresses no opinion – replicate in any measure the

comprehensive civil enforcement schemes and jurisdictional provisions of ERISA § 502(a)

and LMRA § 301. Rather, it appears that Pacificare cites the regulatory provisions, in

part, for the proposition that, even if not all of Plaintiffs' claims relate to the subject matter

addressed in the MMA's implementing regulations, this court has federal-question

removal jurisdiction over the claims which are preempted and supplemental jurisdiction

over any claims which "survive preemption." (Pacificare Mem. of Law at 8 (¶¶ 2.12,

2.24) (Doc. No. 13)); (Pacificare Not. of Removal ¶¶ 4-5 (Doc. No. 1).) As aptly stated

by another district court in this circuit, however, "[t]he argument that some but not all

claims are preempted or 'substantively displaced' by federal law is an ordinary preemption

defense" and "does not convey federal question jurisdiction on the federal courts." Signer

v. DHL Worldwide Exp., Inc., No. 06-61932-CIV, 2007 WL 1521497, *5 (S.D. Fla. May

22, 2007) (citing Geddes, 321 F.3d at 1352-53); see also Blab T.V., 182 F.3d at 859 n.3

("If the creation of a federal cause of action served as the sole litmus test for congressional

intent, complete preemption would apply to every federal statute that creates such a cause

of action and complete preemption would be common rather than extraordinary.").

    Consistent with Signer, *supra*, the Fifth Circuit has noted that a federal preemption

statute which extends to some, "*but not all*," common-law actions "is inconsistent with a

finding that [a statute] represents a complete preemption statute." Hart v. Bayer Corp.,

199 F.3d 239, 245 n.3 (5th Cir. 2000) (emphasis in original). Here, as cited in the footnote

below, CMS' commentary in the Federal Registry contains language which, pursuant to

Hart's reasoning, is incompatible with a finding that Congress intended 42 U.S.C.

§ 1395w-26(b)(3) to operate as a complete preemption statute.[14] (See Pls. Resp. to Defs.

Notice of Suppl. Auth. at 6-7 & Ex. B (Doc. No. 29).)  In short, Pacificare has not

demonstrated that 42 U.S.C. § 1395w-26(b)(3) or the MMA's regulatory provisions

provide an exclusive private federal remedy for the alleged wrongful conduct alleged by

Plaintiffs or, in other words, that Congress intended to displace Plaintiffs' state common-

law claims in favor of an exclusive private federal remedy.


(d) Summary of Analysis

Pacificare's reliance on 42 U.S.C. § 1395w-26(b)(3) as a complete preemption

statute is not supported by any convincing authority or compelling reasoning.  Because

Pacificare has not demonstrated that 42 U.S.C. § 1395w-26(b)(3) "provide[s] the exclusive

cause of action" for the wrongful conduct alleged by Plaintiffs or "set[s] forth procedures

and remedies governing" Plaintiffs' causes of action, Beneficial National Bank, 539 U.S.

---

[14] See Dep't of Health & Human Services, Centers for Medicare & Medicaid
Services, Medicare Program; Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01,
4319 (Jan. 28, 2005) (to be codified at 42 C.F.R. pts. 400, 403, 411, 417 & 423) (finding
preemption under Part C and Part D analogous and commenting that "[i]n areas where we
have neither the expertise nor the authority to regulate, we do not believe that State laws
would be superseded or preempted.  For example, State environmental laws, laws
governing private contracting relationships, tort law, labor law, civil rights laws, and
similar areas of law would, we believe, continue in effect and PDP sponsors in such
States would continue to be subject to such State laws."); see also id. at 4362
(commenting on the MMA grievance/appeal procedures and observing that "tort law, and
often contract, are generally developed based on case law precedents established by
courts, rather than by . . . statutes . . . or regulations" and stating that "we did not believe,
for example, that wrongful death or similar lawsuits based upon tort law would be
superseded by the appeals process established in these regulations").

at 8, the court finds that complete preemption does not constitute an adequate ground for removal.

### C. Substantial Federal Question Doctrine

In its brief, Pacificare alludes to the substantial federal question doctrine. (See Pacificare Resp. to Pls. Mot. Remand at 1 (Doc. No. 12).) To the extent that Pacificare is attempting to inject the substantial federal question doctrine as an independent basis for removal, which is unclear (compare Notice of Removal ¶¶ 3-5, with Pacificare Resp. to Pls. Mot. Remand at 1), the court is unpersuaded by Pacificare's reliance on this doctrine.

In a post-Beneficial National Bank case, the Eleventh Circuit recognized that federal-question removal jurisdiction exists when a state-law complaint reveals "substantial questions of federal law." Dunlap, 381 F.3d at 1285. The substantial federal question doctrine is distinct from the complete preemption doctrine. See id. "In order for a state-law claim to raise substantial questions of federal law, '[federal] law must be an essential element of [plaintiff's] claim[, and] the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." Id. (second set of brackets altered) (citation omitted). "'[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" Id. (quoting Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986)). The Supreme Court recently

characterized the substantial federal question doctrine as narrow in scope and seldom

appropriate as a basis for establishing federal-question removal jurisdiction.  See Empire

Healthchoice Assurance, Inc. v. McVeigh, ___ U.S. ___, ___, 126 S.Ct. 2121, 2137

(2006) (opining that removal based upon the substantial federal issue doctrine only applies

to a "slim category" of cases).

    Pacificare's arguments do not focus separately on the substantial federal question

doctrine, and Pacificare does not cite any authority which discusses the doctrine.

Pacificare has not demonstrated (or argued) that a substantial question of federal law is a

necessary element of any of Plaintiffs' state common-law claims.  To the contrary,

Pacificare argues that Plaintiffs' state-law claims cease to exist when viewed through the

lens of preemption.  See, e.g., Hoskins, 343 F.3d at 773 (where complete preemption

applies, a plaintiff's "cause of action is either wholly federal or nothing at all") (internal

quotations omitted).  At best, Pacificare fashions a substantial federal question based

solely upon whether federal law completely preempts Plaintiffs' state common-law claims.

(See Pacificare Resp. to Pls. Mot. Remand at 1 (Doc. No. 12), arguing that Plaintiffs'

claims "raise *substantial questions of federal law* . . . and accordingly, are completely

preempted by federal law") (emphasis added).)

    As discussed in the preceding subsection, Pacificare has not demonstrated a basis

for complete preemption.  A removing defendant cannot transform ordinary preemption

issues into substantial questions of federal law so as to create a foundation for removal

jurisdiction.  Permitting removal jurisdiction on this basis would improperly elevate

30

ordinary preemption to a removal doctrine and would render meaningless the jurisdictional

distinction between complete preemption and ordinary preemption. See Wisconsin v.

AT&T Corp., 217 F. Supp.2d 935, 938 (W.D. Wis. 2002) (rejecting defendant's

"argument that jurisdiction is supported by the existence of a 'substantial federal issue'"

and finding that, "in the present context of a preemption argument, invocation of

substantial federal issue jurisdiction would swallow the well established rule that a

conflict preemption defense does not support federal question jurisdiction"); cf. Smith v.

GTE Corp., 236 F.3d 1292, 1310-11 (11th Cir. 2001) (preemption defense in case

involving state-law fraud claims against telecommunications service provider does not

demonstrate that any "substantial question of federal law" is necessary for plaintiffs to

obtain requested relief). Accordingly, the court finds that Pacificare has not demonstrated

a substantial question of federal law so as to support removal jurisdiction in this case.


### D.  Costs and Attorney's Fees

Relying on 28 U.S.C. § 1447(c), Plaintiffs request an award of costs and fees

incurred as a result of Pacificare's removal, asserting that Pacificare's "only purpose for

removal of the action is delay" and that "no legitimate grounds exist[] for removal." (Pls.

Mem. of Law at 9 (Doc. No. 8).) Opposing Plaintiffs' request, Pacificare argues that it

"had a reasonable and good faith basis" for removing this action. (Pacificare Mem. of

Law at 14 (Doc. No. 13).)

Section § 1447(c) provides, in relevant part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award under § 1447(c) is discretionary. See Hobbs v. Blue Cross Blue Shield of Alabama, 276 F.3d 1236, 1243 (11th Cir. 2001). Applying § 1447(c), this court typically has declined to exercise its discretion and impose fees and costs unless the removing party's actions "were unreasonable or federal jurisdiction was patently lacking at the time of removal." Moates v. Cargill, Inc., No. Civ. A. 01-D-232-N, 2001 WL 910410, *2 (M.D. Ala. 2001) (collecting cases).

In this case, the court declines to award costs and attorney's fees for two reasons. First, contrary to Plaintiffs' argument and as discussed above, Pacificare's removal was not procedurally defective, and the "unanimity rule" was not violated by Bell's failure to consent to removal. Second, in general, the doctrine of complete preemption is not a simple concept, see Wilson v. Coman, 284 F. Supp.2d 1319, 1341 (M.D. Ala. 2003) (observing that the complete preemption doctrine is "very complicated"), and, specific to this case, Pacificare's complete preemption argument invoked a novel removal jurisdictional issue which, to the court's knowledge, no other circuit court of appeals has squarely addressed. Although remand is warranted, the court does not find that Pacificare's removal of this action was so unjustified as to support a finding that federal question jurisdiction was patently lacking at the time of removal.

## V. CONCLUSION

The court finds that this case is due to be remanded to the Circuit Court of Bullock County, Alabama, because Pacificare has not met its burden of demonstrating that 42 U.S.C. § 1395w-26(b)(3) is a complete preemption statute or that a substantial question of federal law exists so as to support removal jurisdiction. See Leonard, 279 F.3d at 972 ("A removing defendant bears the burden of proving proper federal jurisdiction."). Whether Plaintiffs can avoid federal law by exclusive reliance on state-law is a matter for the state court under ordinary preemption principles. The court's finding that Pacificare has failed to show complete preemption under 42 U.S.C. § 1395w-26(b)(3) or the existence of a substantial question of federal law action does not prejudge the viability of Plaintiffs' state common-law claims. See Geddes, 321 F.3d at 1357 (holding that "state courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary"). Although the court finds that Plaintiffs' motion to remand is due to be granted, the court declines to award Plaintiffs attorney's fees and costs.

## VI. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiffs' motion to remand be and the same is hereby GRANTED and that this action be and the same is hereby REMANDED to the Circuit Court of Bullock County, Alabama, pursuant to 28

U.S.C. § 1447(c). The Clerk of Court is DIRECTED to take all steps necessary to

effectuate said remand.

It is further CONSIDERED and ORDERED that Plaintiffs' request for costs and

attorney's fees be and the same is hereby DENIED.

Done this 28th day of September, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE