IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSIE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:07-cv-321-WKW |
| ) | (WO) |
| VIVA HEALTH, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This case is before the court on the plaintiff's Motion to Remand (Doc. # 4). For the reasons set forth below, the Motion to Remand is due to be GRANTED.

### **I.  FACTS AND PROCEDURAL HISTORY**

Plaintiff Susie Williams ("Williams") sued Viva Health, Inc. ("Viva") and Ricky Crapp ("Crapp") alleging tort and breach of contract claims under state law that related to the insurance that Viva provided and Crapp sold to her. Williams has succinctly summarized her claims: "Plaintiff sued VIVA because they [sic] negligently screwed up her insurance." (Pl.'s Remand Br. 10.)

In her complaint, Williams states that in October 2006 she received a solicitation from Viva through the mail to enroll in its prescription drug program. (Compl. ¶ 7.) Williams contacted Viva and met with Crapp, a Viva sales representative, who told her that Viva's program was superior to her current prescription drug program. (*Id.* ¶¶ 8-11.) Williams then claims she enrolled in Viva to supplement – not replace – her Public Education Employee Health Insurance Plan ("PEEHIP") prescription coverage that she currently had. (Williams

Aff.) However, shortly after enrolling with Viva, Williams learned from her pharmacist that her total prescription drug coverage, including her PEEHIP plan, was $3,000.00 per year. (Compl. ¶ 13.) Because her prescriptions cost in excess of $8,000.00 per year, Williams filed a disenrollment form with Viva in December 2006. (*Id.* ¶¶ 14-15.) Viva did not disenroll her from the program, and Williams claims she has experienced great stress because of Viva's failure to disenroll her and because she has not known how she will pay for her prescriptions. (*Id.* ¶¶ 16-18.)

On March 13, 2007, Williams filed a complaint in the Circuit Court of Bullock County.[1] On April 12, 2007, Viva removed the case on federal question grounds, and Williams filed a motion to remand on April 25, 2007. The motion is fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v.*

---

[1] Crapp has not yet been served with the complaint.

*Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

### III.  DISCUSSION

Viva contends that removal was proper because there is federal question jurisdiction. A federal court may exercise subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove to the federal courts "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Id.* § 1441(a). A case arises under federal law "if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, __ U.S. __, 126 S. Ct. 2121, 2131 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)). Viva argues that this case arises under federal law because Williams's claims are preempted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codified in scattered sections of 42 U.S.C.), or, in the alternative, because they depend on embedded and disputed issues of federal law.

*A.     Preemption*

Viva removed this case claiming that because it has a preemption defense there is federal question jurisdiction. Specifically, Viva claims that 42 U.S.C. § 1395w-26(b)(3) and 42 U.S.C. § 405(h) preempt Williams's claims. The court finds that there is no federal

question jurisdiction because neither statute completely preempts Williams's claims.

Though a claim arises under federal law if it conforms to the well-pleaded complaint rule, *see McVeigh*, 126 S. Ct. at 2131; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), the existence of a federal defense is not sufficient to create federal question jurisdiction unless complete preemption exists. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-8 (2003). However, in order for complete preemption to exist, "the pre-emptive force of a statute [must be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

### 1.     Preemption under 42 U.S.C. § 1395w-26(b)(3)

Viva argues that there is federal question jurisdiction because § 1395w-26(b)(3) preempts Williams's claims arising under state law. Section 1395-26(b)(3) provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26(b)(3).

Viva first asserts that there is federal question jurisdiction because it has federal preemption defenses to Viva's claims that arise under state law.[2] Viva specifically alleges

---

[2] Viva alleges that Williams's claims in count one, that Viva negligently procured her insurance, and in count three, that Viva acted wantonly, are expressly preempted by 42 C.F.R. § 422.10, which Viva contends prohibited it from persuading Williams not to enroll in its plans. Viva also argues that Williams's claims are preempted through conflict preemption by 42 C.F.R. § 423.50 because its marketing materials met

that there is express[3] and conflict[4] preemption. Express and conflict preemption are types of ordinary preemption; ordinary preemption "provid[es] a substantive defense to a state law action on the basis of federal law." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 n.8 (11th Cir. 2004) (internal quotations marks and citation omitted).

Viva argues that ordinary preemption is sufficient to create a federal question, but this position has no basis in law because only complete preemption gives rise to federal question jurisdiction. As the Eleventh Circuit has explained, "a case may *not* be removed to federal court on the basis of a federal defense, including that of federal preemption." *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352-53 (11th Cir. 2003). "[A] federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption." *Id.* at 253. Viva's argument that there is express or conflict preemption is simply irrelevant to whether this court has subject matter jurisdiction.

The next issue is whether §1395w-26(b)(3) creates federal question jurisdiction

---

federal standards. Viva does not identify which of Williams's claims are specifically preempted by § 423.50 and merely asserts "to the extent that Plaintiff's claims rely on the adequacy of Viva Health's marketing materials, Plaintiff's claims are preempted." (Def.'s Resp. Br. to Remand 19.) The court does not rule on or evaluate whether these regulations preempt Williams's claims because ordinary preemption does not give rise to federal question jurisdiction.

[3] "'Express preemption' occurs when Congress has manifested its intent to preempt state law explicitly in the language of the statute." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004).

[4] Conflict preemption "arises in two circumstances when it is impossible to comply with both federal and state law and when state law stands as an obstacle to achieving the objectives of the federal law." *Cliff*, 363 F.3d at 1122.

because it completely preempts Williams's claims.[5] Complete preemption "must be manifest in the clearly expressed intent of Congress." *Id.* at 1353. The Supreme Court has indicated that it is reluctant to find complete preemption in "the absence of explicit direction from Congress." *Metro. Life Ins.*, 481 U.S. at 64. Complete preemption rarely applies; the Supreme Court has found complete preemption in only three statutes: § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185; § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1132(a); and §§ 85-86 of the National Bank Act, codified at 12 U.S.C. §§ 85-86. *See Harris v. Pacificare Life & Health Ins. Co.*, 514 F. Supp. 2d 1280, 1289 (M.D. Ala. 2007).

Neither the Eleventh Circuit nor any other circuit has addressed whether § 1395w-26(b)(3) carries complete preemptive force, but other district courts have found that it does not. *See Lassiter v. Pacificare Life & Health Ins. Co.*, No. 07-583, 2007 WL 4404051, at *2-3 (M.D. Ala. Dec. 13, 2007); *Bolden v. Healthspring of Ala., Inc.*, Nos. 07-413, 07-414, 2007 WL 4403588, at *10 (S.D. Ala. Oct. 2, 2007); *Harris*, 514 F. Supp. 2d at 1296. While one court has found that § 1395w-26(b)(3) does completely preempt state law claims, *Dial v. Healthspring of Ala., Inc.*, 501 F. Supp. 2d 1348 (S.D. Ala. 2007), this court joins others in declining to follow *Dial*. *See Lassiter*, 2007 WL 4404051, at *2; *Bolden*, 2007 WL 4403588, at *10; *Harris*, 514 F. Supp. 2d at 1294 n.13.

---

[5] Viva did not explicitly put forth this argument in their briefing. In fact, it explicitly stated that it was asserting express or conflict preemption. (Def.'s Resp. Br. to Remand 10.) However, because Viva argues that § 1395w-26(b)(3) creates federal question jurisdiction, the court will address this argument.

Moreover, Viva has not shown that Congress intended § 1395w-26(b)(3) to be a complete preemption statute. In effectuating complete preemption under LMRA and ERISA, Congress expressly created a federal cause of action to resolve disputes.[6] *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."); 29 U.S.C. § 1132(f) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."). Unlike LMRA and ERISA, the MMA does not have a provision providing for a federal cause of action and only requires that federal law "shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans . . . ." 42 U.S.C. § 1395w-26(b)(3). The plain language of § 1395w-26(b)(3) does not support the conclusion that Congress intended complete preemption.

Viva also relies heavily on *Uhm v. Humana, Inc.*, No. 06-185, 2006 WL 1587443 (W.D. Wash. June 2, 2006), to support its claim of federal question jurisdiction. However, the court in *Uhm* did not discuss or analyze complete preemption. The issue in *Uhm* was whether plaintiffs' claims were due to be dismissed for failure to state a claim because

---

[6] The Supreme Court used a different analysis to find complete preemption under the National Bank Act and focused on the "longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks" and "the special nature of federally chartered banks." *Beneficial Nat'l Bank*, 539 U.S. at 10. Viva has not argued, and the court does not find, that this reasoning applies here.

§ 1395w-26(b)(3) preempted plaintiffs' tort and contract claims. *Id.* at *2. The court's analysis focused on ordinary preemption. *Id.* Moreover, the plaintiffs in *Uhm* filed suit in federal court based on diversity jurisdiction and issues related to removal were not before the court. *Id.*

Viva's reliance on § 1395w-26(b)(3) as a basis for complete preemption is unfounded. The court therefore finds this statute is not an adequate ground for removal.

### 2.   Complete Preemption under 42 U.S.C. § 405(h)

Viva also argues that 42 U.S.C. § 405(h) completely preempts Williams's claims. Viva contends that Williams's claims "arise under" the Medicare Act and are "inextricably intertwined" with a claim for benefits, requiring Williams to exhaust administrative remedies before bringing a claim.

Section 405(h) of the Social Security Act provides that no "decision of the [Secretary of the Department of Health and Human Services] shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h). Although § 405(h) discusses old-age and disability claims, Congress has incorporated it into the Medicare Act, so that this provision also applies to claims under the Medicare Act. *See* 42 U.S.C. § 1395ii. Section 405(g) establishes the procedure for judicial review of claims seeking benefits and allows a party to obtain review in district court only after the Secretary of the Department of Health and Human Services has made a final decision. *Id.* § 405(g). Federal courts lack subject matter jurisdiction to hear claims for benefits arising out of a Medicare plan unless

the party has exhausted administrative remedies.[7] *Id.*

The Supreme Court has held that § 405(g) "is the sole avenue for judicial review for all 'claims arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (citation omitted). Courts disagree on whether *Ringer* stands for the proposition that § 405(h) completely preempts state law.[8] Some courts have found that § 405(h) completely preempts claims arising under the Medicare Act. *See Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1316 (S.D. Fla. 2004); *Kelly v. Advantage Health, Inc.*, No. 99-362, 1999 WL 294796, at *4 (E.D. La. May 11, 1999). However, another court has found *Ringer* did not address whether § 405(h) complete preempts state law claims because the plaintiff had brought federal claims in federal court. *Bolden*, 2007 WL 4403588 at *4 n.11. The court doubts that § 405(h) is a complete preemption statute (which would make removal in this case proper) but need not decide the issue because Williams's claims do not arise under the Medicare Act.

In *Ringer*, the Supreme Court put forth two tests for determining whether a claim arises under the Medicare Act. The first is whether the claims are those "in which 'both the standing and the substantive basis for the presentation' of the claims" is the Medicare Act. *Ringer*, 466 U.S. at 615 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)).

---

[7] *See also* 42 U.S.C. § 405(h) ("No action against the United States, the [Secretary of the Department of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.").

[8] Interestingly, when courts list the statutes for which the Supreme Court has found complete preemption, § 405(h) is not included. *See, e.g.*, *Beneficial*, 539 U.S. at 6-7; *Dunlap*, 381 F.3d at 1291; *Harris*, 514 F. Supp. 2d at 1289.

9

Because neither party contends that the standing and substantive basis for Williams's claims is the Medicare Act, the court need not evaluate this test.

The second test is whether the state law claims are "inextricably intertwined" with a denial of benefits. *Ringer*, 466 U.S. at 624. In *Ardary v. Health Plans of Cal., Inc.*, 98 F.3d 496 (9th Cir. 1996), the heirs of a deceased Medicare beneficiary claimed the Medicare provider's failure to authorize an airlift to a larger hospital resulted in the beneficiary's death. *Ardary*, 98 F.3d at 497. The plaintiffs brought negligence and intentional tort claims. *Id.* The Ninth Circuit found that while the claim was predicated on the failure to provide a specific type of benefit – an airlift – the plaintiffs were "*at bottom* not seeking to recover *benefits*." *Id.* at 500. The Ninth Circuit found "nothing in the legislative history to suggest that [§ 405(h)] was designed to abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits . . . ." *Id.* at 501.

Here, Williams has asserted two types of claims, neither of which is, at bottom, a claim for Medicare benefits. Some of Williams's claims seek damages for Viva's failure to disenroll her from Viva's prescription plan and return her to her original prescription plan.[9] These claims are not for benefits as they involve a wholly collateral issue – Viva's failure to disenroll Williams when she requested it do so. Williams's other claims relate to the quality of insurance Viva sold Williams and what she terms Viva "negligently screw[ing] up her

---

[9] These are her claims in Count II for negligence, Count III for wantonness, Count IV for outrage, and Count V for breach of contract. (Compl. ¶¶ 26-43.)

10

insurance."[10] (Pl.'s Remand Br. 10.) With these claims, Williams is not claiming that she is entitled to benefits from Viva but rather is challenging the poor quality of product that Viva provided to her. Moreover, her claim is not one for benefits because Williams would not be made whole if Viva paid her benefits. Williams seeks redress for her injury resulting from Viva's failure to disenroll her and the anguish she experienced as a result of not knowing the status of her insurance.[11]

Even if § 405(h) were to completely preempt claims under state law, Williams's claims are not completely preempted because they do not arise under the Medicare Act. Accordingly, removal in reliance upon § 405(h) was improper.

B.   *Substantial Federal Issue*

Viva argues, in the alternative, that there is federal question jurisdiction because embedded in Williams's claims arising under state law are substantial issues of federal law. Viva argues there are three such issues, but these issues are actually preemption defenses.[12] Because Williams's claims do not contain substantial embedded issues of federal law, removal on this ground was inappropriate.

---

[10] These are her claims in Count I for negligent failure to procure insurance and Count V for negligent hiring, training, and supervision. (Compl. ¶¶ 21-25, 44-47.)

[11] After Williams commenced the lawsuit, Viva agreed to provide her prescription drug benefits beyond the $3,000 maximum through October 2007. (Mot. Remand Ex. F.)

[12] The three issues are: (1) whether Viva can be liable under state law for not discouraging her from enrolling when federal law prohibits health screening; (2) whether VIVA can be liable under state law for insufficient marketing materials when the materials comply with federal law; and (3) whether Williams must have exhausted federal administrative remedies for challenging coverage decisions in order to bring her state law claims. (Notice of Remand ¶ 23.)

In certain cases federal question jurisdiction lies over claims arising under state law that "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court has long recognized this type of federal question jurisdiction, *id.*, although this category of cases is "special and small." *McVeigh*, 126 S. Ct. at 2136. The mere presence of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). To determine whether a state law claim arises under federal law, a court must determine whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In *Grable*, the Supreme Court determined that removal was proper because the resolution of the claims arising under state law depended on the interpretation of a disputed federal statute. *Id.* at 319-20. The IRS had seized real property belonging to Grable to satisfy a tax delinquency, and though Grable received notice at that time of the seizure by mail, he brought a quiet title action under state law a few years later, claiming that the IRS's notice was insufficient under federal law. *Id.* at 310-11. The defendants removed the case to federal court, claiming there was federal question jurisdiction. *Id.* at 311.

The Supreme Court found there was a disputed federal question embedded in Grable's quiet title action because his claim of superior title depended on a federal issue – the

adequacy of the IRS's notice under federal law. *Id.* at 314-15. The disputed issue was substantial as it would be dispositive for other cases in the future. *Id.* at 315. Notably, it was the only disputed legal or factual issue in the case. *Id.* Finally, the Supreme Court found that federal court resolution of the issue would not upset the balance between the state and federal systems because the federal government had a strong interest in collecting taxes, in having a federal forum available to vindicate its own administrative actions, and because only rarely would title cases arising under state law implicate federal tax law. *Id.*

A year after *Grable*, the Supreme Court in *McVeigh* reinforced that there is a substantial question of federal law in only a "special and small category" of cases. *McVeigh*, 126 S. Ct. at 2136. In *McVeigh*, a health insurance carrier for federal employees sought reimbursement from an enrollee for damages recovered in a state tort action. *Id.* at 2129. Using the same analysis as in *Grable*, the Supreme Court concluded that it lacked subject matter jurisdiction because the disputed issue in *McVeigh* did not have a federal character as it involved the settlement of a state court action. *Id.* at 2137. The Court explained the issue was not substantial by contrasting it to the one in *Grable*. While the issue in *Grable* was "a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous tax sale cases," *id.* (internal quotation marks and citation omitted), the issues in *McVeigh* were "fact-bound and situation-specific." *Id.* Finally, the Court found that the federal-state balance weighed against federal question jurisdiction as the state court "is competent to apply federal law, to the extent it is relevant." *Id.* While the United States has

13

an interest in the health and welfare of its employees, the interest did not justify turning the claim into a federal case. *Id*.

Here, there is not a substantial question of federal law embedded in Viva's claims. First, there is no disputed issue of federal law embedded in Williams's claims. The disputed federal issue in *Grable* regarding the adequacy of notice was an element of the *plaintiff's* claim under state law. *See Grable*, 545 U.S. at 314. That is not the case here. Viva is merely asserting preemption defenses to the Williams's state law claims.

Second, even assuming there were disputed issues of federal law, they would not be substantial. Although Viva claims there are substantial issues, there is no support for this contention. Viva has not shown that the issues are pure issues of law or that the resolution of this case would be determinative for others in the future.

Finally, deciding this case in federal court would upset the balance between the state and federal systems. Viva asserts that Congress intended there to be a federal forum because it preempted state law. However, because ordinary preemption does not give rise to federal question jurisdiction, the court cannot infer that Congress intended there to be a federal forum. State courts are well-equipped to decide whether federal law preempts state law, as these issues are regularly litigated in state courts. Moreover, an exercise of federal jurisdiction here would upset the balance between the state and federal systems by moving an entire class of cases – those that raise preemption defenses – into federal court.

Viva has argued that its preemption defenses are embedded issues of federal law.

However, substantial issues of federal law create federal question jurisdiction in only a small class of cases, and this case is not one of them.[13]  Accordingly, Viva's removal on this ground was inappropriate.  Because there is not federal question jurisdiction, this case is due to be remanded to state court.

C.   *Attorney Fees*

In her motion to remand, Williams argues that she is entitled to costs and attorney fees under 28 U.S.C. § 1447(c) because Viva acted in bad faith in removing this action.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "[C]ourts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  A trial court should not grant attorney fees simply because the effort to remove a case failed.  *Sheridan Healthcorp., Inc. v. Neighborhood Health P'ship, Inc.*, 459 F. Supp. 2d 1269, 1274 (S.D. Fla. 2006).

---

[13] The parties have also argued whether 42 U.S.C. § 1395 prohibits this court from ruling on issues related to Medicare because it limits federal oversight over the practice of medicine.  That statute provides:

> Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person.

42 U.S.C. § 1395.  Section 1395 is plainly inapplicable to the issues before the court in this case.

Viva used a reasonable ground for removal when it asserted that there was complete preemption. "Complete preemption is not a simple concept." *Harris*, 514 F. Supp. 2d at 1298. In *Harris*, the court did not award costs or attorney fees when the defendant removed a case claiming complete preemption under § 1395w-26(b)(3) because the issues were novel and had not been addressed by the Eleventh Circuit. *Id.* Here, the complete preemption issues were complex and had not been addressed by the Eleventh Circuit. Because Viva's removal on this ground was objectively reasonable, awarding costs or attorney fees would be inappropriate. Therefore, Williams's request for attorney fees will be DENIED.

### IV. CONCLUSION

Accordingly, it is ORDERED that:

1. Plaintiffs' Motion to Remand (Doc. # 14) is GRANTED;

2. This case is REMANDED to the Circuit Court of Bullock County;

3. The Clerk is DIRECTED to take appropriate steps to effect the remand; and

4. The plaintiff's request for costs and attorney fees is DENIED.

DONE this 25th day of January, 2008.

                              /s/ W. Keith Watkins
                              UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).